729 A.2d 981

**The MILTON COMPANY et al.**

v.

**COUNCIL OF UNIT OWNERS OF BENTLEY PLACE CONDOMINIUM.**

No. 86, Sept. Term, 1998.

Court of Appeals of Maryland.

May 18, 1999.

266

J. Mitchell Kearney (Brown, Diffenderffer, Wagonheim & Kearney, L.L.P., on brief), Towson, for Petitioners.

Barry L. Steelman (Mark S. Dachille, Barry L. Steelman, P.A., on brief), Towson, for Respondent.

Kevin P. Kennedy, Schulman, Rogers, Gandal, Pordy and Ecker, P.A., Rockville, Roger D. Winston, Linowes and Blocher, L.L.P., Silver Spring, for Suburban, Maryland Bldg. Industry Ass'n, amicus curiae.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RODOWSKY, Judge.

This building construction case involves the Bentley Place Condominium (the Condominium), a complex consisting of 240 residential units in 20 two-story buildings located on approximately 14.2 acres in Montgomery County. Our grant of

certiorari embraces a number of issues including whether the express and implied warranties on the sale of newly constructed private dwelling units, recognized and created by Maryland Code (1974, 1996 Repl.Vol.), §§ 10–202 and 10–203 of the Real Property Article (RP), are subject to RP § 11–131, creating warranties by the developer of a residential condominium and providing for notice of defects, duration of warranties, and limitations of actions.[1]

The sole plaintiff in this action, the Respondent in this Court, is the Council of Unit Owners of Bentley Place Condominium (the Council).[2] The Petitioners in this Court are defendants The Milton Company (Milton) and Tuckerman Lane Development Company, Inc. (Tuckerman). Bentley Place was built in phases. The first sales of units were on January 31, 1987, and sales to original purchasers continued through July 24, 1991. By a letter dated September 13, 1989, the Council notified the Petitioners of claimed defects in materials and workmanship in common elements at the Condominium. Discussions between the parties began and continued after the parties, on January 25, 1991, executed an agreement headed "Agreement to Extend Statute of Limitations" (the Tolling Agreement). The date for filing suit under the protection of the Tolling Agreement was extended to and including October 31, 1991.

This action was filed October 30, 1991. The Council sought damages for claimed defects in the common elements and in the units of individual owners. Insofar as relevant to this certiorari review the complaint, after alleging facts applicable to all counts, was divided into counts labeled as negligence, breach of implied warranties, breach of contract, breach of express warranty, negligent misrepresentation, and violation of the Maryland Consumer Protection Act.

---

1. In this opinion all statutory references, unless otherwise noted, are to Maryland Code (1974, 1996 Repl.Vol.), Real Property Article.

2. A separate companion action, filed as a class action on behalf of the unit owners at Bentley Place, was consolidated with the action now before us, but then stayed.

The case was tried before a jury for over three weeks in June and July of 1994. During the trial the Council introduced a survey of unit owners that was conducted by an expert engaged by, and who testified for, the Council.

The circuit court submitted the case to the jury on special interrogatories that first asked the jury to determine liability, if any, as to each defendant on each of the above-recited counts. The jury returned a verdict in favor of the Council on each count against both Petitioners, with the exception of the negligent misrepresentation count on which the verdict was returned against Milton only. No issue is presented by the Petitioners that asks this Court to distinguish between the Petitioners.

The circuit court's verdict form next asked the jury to itemize damages on any count on which the jury found liability. Presented on the form were ten possible categories which basically coincided with the categories utilized by the Council in presenting evidence of damages. On the breach of contract, negligent misrepresentation, and negligence counts the jury awarded damages of $6,682,052 itemized in the negligence section of the verdict form as follows:

| | | |
|---|---|---|
| "(i) | Site Components | $ 214,787 |
| (ii) | Exterior Building Envelope | 1,427,705 |
| (iii) | Building Attic Spaces and Ventilation | 589,000 |
| (iv) | Building Services | 142,400 |
| (v) | Interior Common Elements (floor/ceiling assembly) | 1,620,160 |
| (vi) | Cathedral Beam | 693,000 |
| (vii) | General Conditions | 705,000 |
| (viii) | Contingency | 300,000 |
| (ix) | Plumbing | 440,000 |
| (x) | HVAC | 550,000." |

On the counts labeled as breach of implied warranties and breach of express warranty the jury awarded $5,677,052. Accounting for the $1,005,000 difference from the breach of contract, negligent misrepresentation, and negligence counts is the absence of any award on the warranty counts for general conditions and contingency. On the claim of violation of the Consumer Protection Act the verdict was $5,977,052. On that claim there was no award of damages for general

conditions. These various theories of liability may be the basis for but one recovery, as the Council recognizes that recovery cannot exceed the maximum verdict of $6,682,052.

The parties agree that items (i) through (viii) of the special verdicts are damages that were awarded for defects in common elements and that the damages specified in items (ix) and (x) were awarded for defects in the units that are individually owned.

Following receipt of the jury verdict the proceedings in the circuit court were directed to the resolution of post-judgment motions and of a myriad of third-party claims. Final judgment was entered in May 1996, and both parties appealed to the Court of Special Appeals.

That court affirmed. *Milton Co. v. Council of Unit Owners of Bentley Place Condominium,* 121 Md.App. 100, 708 A.2d 1047 (1998). Milton and Tuckerman petitioned this Court for a writ of certiorari, which we granted. 351 Md. 6, 715 A.2d 965 (1998).

The petition for certiorari raises five issues. Of these issues, one raises limitations and the other an objection to the evidence of the survey of unit owners. Specifically, the Petitioners ask:

1. "Did The Trial Court And Court Of Special Appeals Err In Holding That Unit Owners Whose Claims Were Time–Barred Could Recover Damages For Alleged Defects In Their Individual Units?"[3]

2. "Did The Trial Court And Court Of Special Appeals Err In Holding That An Expert May Base Opinions Concerning Alleged Defects On Hearsay Information Provided By Lay Persons?"

---

**3.** Issue one is quoted from the Petitioners' brief. In their petition for certiorari the Petitioners included "Subsequent Purchasers" in this question, but the Petitioners have not made any argument in their brief that is directed to subsequent purchasers.

Issues two through five are quoted from the petition for certiorari.

Two other issues raised in the certiorari petition would result, if the Petitioners are successful, in the reversal of the award of damages for defects in individually owned units, assessed in the plumbing and HVAC classifications on the special verdict form. The verdicts on all counts included damages for those two classifications. Specifically, the Petitioners ask:

3. "Did The Trial Court And Court Of Special Appeals Err In Holding That Respondent Has Standing To Pursue And Recover For Individual Unit Owner Claims For Alleged Damages Uniquely Applicable To Such Claims?"

4. "Did The Trial Court And Court Of Special Appeals Err In Holding That The Implied Warranties Under Title 10 Of The Real Property Code Apply Independently Of The Warranties Found In The Maryland Condominium Act?"

Finally, the Petitioners challenge the verdict on the negligence count by asking:

5. "Did The Trial Court And Court Of Special Appeals Err In Refusing to Limit The Respondent's Negligent Construction Claim For Economic Loss To The Cost Of Repairing Only Those Improvements That Allegedly Posed A Serious And Immediate Risk Of Death Or Serious Personal Injury?"

These issues will be further explained, and additional facts will be stated, as we address the specific issues below.

Three of the issues are intimately interwoven with statutory provisions concerning warranties that are found in Title 10, "Sales of Property," Subtitle 2, "Express and Implied Warranties," and in Title 11, the "Maryland Condominium Act." The warranties addressed by Title 10 are made by a "vendor" to a "purchaser" with respect to "improvements." A vendor is "any person engaged in the business of erecting or otherwise creating an improvement on realty, or to whom a completed improvement has been granted for resale in the course of his business." § 10–201(e). A purchaser is "the original purchaser of improved realty ...." § 10–201(c). " 'Improvements'

includes every newly constructed private dwelling unit ...."
§ 10–201(b).

Particularly relevant to the instant matter are §§ 10–202 and 10–203, dealing respectively with express and implied warranties. Under § 10–202(a) the means by which an express warranty may be created by a vendor include:

"(1) Any written affirmation of fact or promise which relates to the improvement and is made a part of the basis of the bargain between the vendor and the purchaser creates an express warranty that the improvement conforms to the affirmation or promise.

"(2) Any written description of the improvement, including plans and specifications of it, which is made a part of the basis of the bargain between the vendor and the purchaser creates an express warranty that the improvement conforms to the description."

In relevant part § 10–203(a) provides that

"in every sale, warranties are implied that, at the time of the delivery of the deed to a completed improvement or at the time of completion of an improvement not completed when the deed is delivered, the improvement is:

(1) Free from faulty materials;

(2) Constructed according to sound engineering standards;

(3) Constructed in a workmanlike manner; and

(4) Fit for habitation."

The provisions now found in §§ 10–202 and 10–203(a) have been in effect since Chapter 151 of the Acts of 1970.

The Title 10 implied warranties expire

"(1) [i]n the case of a dwelling completed at the time of the delivery of the deed to the original purchaser, one year after the delivery or after the taking of possession by the original purchaser, whichever occurs first; [or]

. . . .

"(3) [i]n the case of structural defects, 2 years after the date of completion, delivery, or taking possession, whichever occurs first."

§ 10–204(b).

The statute of limitations for a breach of warranty action under Title 10 is two years "after the defect was discovered or should have been discovered or within two years after the expiration of the warranty, whichever occurs first." § 10–204(d).

Title 11, the Maryland Condominium Act, provides for warranties in § 11–131. In relevant part that section reads:

"(a) *Application of §§ 10–202 and 10–203; liability of developer for improvements.*—(1) The provisions of §§ 10–202 and 10–203 of this article apply to all sales by developers under this title. For the purposes of this article, a newly constructed dwelling unit means a newly constructed or newly converted condominium unit and its appurtenant undivided fee simple interest in the common areas.

"(2) [Deals with certain grants of an improvement by a developer to an intermediate purchaser].

"(b) *Warranty on unit from developer to owner.*—In addition to the implied warranties set forth in § 10–203 of this article there shall be an implied warranty on an individual unit from a developer to a unit owner. The warranty on an individual unit commences with the transfer of title to that unit and extends for a period of 1 year. The warranty shall provide:

"(1) That the developer is responsible for correcting any defects in materials or workmanship in the construction of walls, ceilings, floors, and heating and air conditioning systems in the unit; and

"(2) [Establishes specific criteria for the performance of heating and of any air conditioning systems].

"(c) *Warranty on common elements.*—(1) In addition to the implied warranties set forth in § 10–203 of this article there shall be an implied warranty on common elements from a developer to the council of unit owners. The warranty shall apply to: the roof, foundation, external and

supporting walls, mechanical, electrical, and plumbing systems, and other structural elements.

"(2) The warranty shall provide that the developer is responsible for correcting any defect in materials or workmanship, and that the specified common elements are within acceptable industry standards in effect when the building was constructed.

"(3) The warranty on common elements commences with the first transfer of title to a unit owner. The warranty of any common elements not completed at that time shall commence with the completion of that element or with its availability for use by all unit owners, whichever occurs later. The warranty extends for a period of 3 years.

"(4) A suit for enforcement of the warranty on general common elements shall be brought only by the council of unit owners. A suit for enforcement of the warranty on limited common elements may be brought by the council of unit owners or any unit owner to whose use it is reserved.

"(d) *Limitation of actions.*—Notice of defect shall be given within the warranty period and suit for enforcement of the warranty shall be brought within 1 year of the warranty period.

"(e) *Exceptions.* . . .

"(2) The provisions of this section do not apply to a condominium that is occupied and used solely for nonresidential purposes."

The Maryland Condominium Act in § 11–141 also provides, in relevant part, as follows:

"(a) *In general.*—The provisions of this title are in addition and supplemental to all other provisions of the public general laws, the public local laws, and any local enactment in the State.

. . . .

"(c) *Conflict with other enactments.*—If the application of the provisions of this title conflict with the application of other provisions of the public general laws, public local laws, or any local enactment, in the State, the provisions of this title shall prevail."

I

■ The circuit court ruled that the Tolling Agreement applied to all of the claims asserted against the Petitioners, and the Court of Special Appeals agreed. *Milton Co.*, 121 Md.App. at 117–18, 708 A.2d at 1055. The Petitioners' position is that the Tolling Agreement applies only to claims by the Council based on the implied warranty on common elements provided by § 11–131(c). Under the Petitioners' construction of the Tolling Agreement all of the common law claims based on defects in individual units are subject to the general statute of limitations, Md.Code (1974, 1998 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article. Under that statute limitations run three years after the cause of action accrues, and, under *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), a cause of action ordinarily accrues when it is discovered. Further, the maximum period of limitations for a Title 10 implied warranty claim is four years from delivery of the deed to a completed improvement. §§ 10–203 and 10–204(b), (d). Because sales of units began in January 1987, but suit was not filed until October 30, 1991, there would be some undetermined number of claims of unit owners that would be barred by these statutes of limitations, if the Tolling Agreement did not apply.

Excerpted below are the principal provisions of the Tolling Agreement. The recitals included the following:

"WHEREAS, notification of a claim under the Maryland Condominium Act, Section 11–131(d) was provided by [the Council] to [the Petitioners] on or about September 13, 1989; and

"WHEREAS, the statute of limitations with respect to any suit which the [Council] may file against the developer expires one year from the date of the expiration of the warranty period[.]"

The parties then agreed that

"1. [Petitioners] will not interpose as a defense the statute of limitations with respect to any suit which may be

filed against [Petitioners] by [the Council] on or before [October 31, 1991] with respect to claims outlined in the September 13, 1989 letter from ... attorneys for [the Council] to [the principal of Petitioners] and subsequent notice including a report provided [to Petitioners] from Architectural Design Consultants, Inc. ('ADC') enclosed with a letter dated September 27, 1990 from [the attorneys for the Council] to [a representative of the Petitioners].

"2. [Petitioners disclaim any concession] that any or all of the claims outlined in the ADC report or previous correspondence to the developer referenced above constitutes compensable warranty claims under the Maryland Condominium Act or under any theory.

"3. [N]egotiations will continue with regard to claims made by [the Council] as outlined in the correspondence and ADC report referenced above, but that this Agreement is solely for the purpose of extending the statute of limitations with regard to those claims and does not constitute an acceptance of liability by the developer or a concession of any or all the claims by the [Council].

"4. [I]f suit is not filed by [the Council] against [Petitioners] by [October 31, 1991], the [Council] understands that it is waiving its right to file suit in connection with claims made for all common element warranty matters contained in Phase I of Bentley Place .... Nothing contained in this document shall constitute a waiver of [the Council's] ability to file suit against [Petitioners] in connection with claims arising out of warranty periods for any phases in Bentley Place ... subsequent to Phase I ...."

Clearly various portions of the Tolling Agreement contain language arguably supporting the position of one or the other party. No party, however, contends that, under the circumstances of this case, it was not exclusively the function of the circuit court to interpret the contract. *Cf. Calomiris v. Woods,* 353 Md. 425, 434–35, 727 A.2d 358, 362–63 (1999). We hold that the circuit court did not err, as a matter of law, in interpreting the Tolling Agreement to apply to all of the claims asserted in this action.

Although the Tolling Agreement may have resulted from negotiations that focused on implied warranties under § 11–131(c), the operative provision of the Tolling Agreement is paragraph one under which the Petitioners covenant not to raise limitations "with respect to any suit." Paragraph one further recognizes that the "claims" being asserted are outlined in the notice of September 13, 1989, and in subsequent notice, including the ADC report. The ADC report includes complaints of alleged defects in individually owned units, and notices subsequent to that of September 13, 1989, included letters of complaint from unit owners concerning alleged defects in their individual units. In addition, paragraph two explicitly recognizes that the threatened lawsuit could assert claims, not only under the Maryland Condominium Act, but "under any theory."

## II

The Petitioners contend that the circuit court erred in admitting certain unit owner surveys conducted by the Council's expert, Robert Davidson, A.I.A., because the surveys contained inadmissible hearsay. The circumstances surrounding admission of the surveys are set forth in Part V of the opinion in this case by Chief Judge Joseph Murphy for the Court of Special Appeals. *Milton Co.*, 121 Md.App. at 119–20, 708 A.2d at 1056–57. We agree with the reasons stated by, and the conclusion of, the Court of Special Appeals on this issue. Essentially that court rested its holding on two grounds. First, the trial court did not abuse its discretion when it ruled that the surveys had significant probative value in assisting the jury to resolve a conflict between the parties' respective expert witnesses by the jury's making a credibility determination.[4] The Court of Special Appeals further reasoned, under the standard enunciated in *Hartless v. State*, 327

---

4. The Council's expert had testified that fifty percent of the surveys reflected a sound transmission problem while the Petitioners' expert, based on the same surveys, concluded that only seventeen percent related to a sound transmission problem.

Md. 558, 579, 611 A.2d 581, 591 (1992), that the surveys contained the type of information reasonably relied upon by experts rendering opinions on similar matters. We note that the Petitioners do not assert that they sought and were denied a limiting instruction advising the jury that the surveys were not substantive evidence.

### III

■ Under this issue the Petitioners challenge the standing of the Council to sue for damages based on defects in individually owned units. The Petitioners' position is succinctly stated in their petition for certiorari.

> "As a legal entity representing the interests of its members, a council of unit owners may sue to enforce the rights of claims of its members only where there exists an express statutory grant of standing. In the instant case, [the Council], which does not have a property interest in the common elements of the Project, was empowered by the legislature with the exclusive right to enforce the implied warranties under § 11–131 of the Act. *See* Md. Real Prop.Code Ann. § 11–109(d)(19) [providing that a council of unit owners has the power '[t]o enforce the implied warranties made to the council of unit owners by the developer under § 11–131 of this title']. Over the objections of Petitioners, however, [the Council] was also allowed to pursue and recover for individual unit owner claims for alleged damages uniquely applicable to each such claim, despite the fact that no individual unit owner was named as a party to the suit and only a few of the 240 unit owners testified at trial."

(Citations omitted) If this submission is correct, the verdicts on all counts would be reduced by $990,000.

The Petitioners' argument does not impact the claim for breach of the § 11–131 warranty on common elements even though the common elements are owned by all of the unit owners. § 11–107(a). A claim of breach of a § 11–131 warranty involving a general common element may be brought only by the council of unit owners, and such a claim involving a

limited common element may be brought either by the council of unit owners, or by any unit owner to whose use the limited common element is reserved. § 11–131(c)(4). The Petitioners' argument, however, does impact claims under any theory for damages based on defects in individually owned units, and it also impacts claims, other than under a § 11–131 warranty theory, for damages based on defects in the common areas.

The Council's position is that claims based on defects in individually owned units may be asserted by the Council by virtue of § 11–109(d)(4) under which a council of unit owners has the power "[t]o sue and be sued, complain and defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." The Petitioners' rejoinder is that construing § 11–109(d)(4) to permit the Council to sue on claims owned by distinct unit owners leads to absurd consequences, *e.g.,* two or more actions on the same claim by different parties. In the Petitioners' view, § 11–109(d)(4) is limited to a representative action that involves the condominium as a whole.

In order to decide the instant matter we need not map the outer boundaries of the reach of § 11–109(d)(4). It is sufficient to hold, as we do, that it applies here. The $990,000 damage award represents the cost of repairing defects in plumbing and HVAC that affected a multiplicity of units throughout Bentley Place.

The plain language of § 11–109(d)(4), by distinguishing between an action brought by a council on behalf of itself, and an action brought by a council on behalf of "two or more unit owners," clearly permits a council to act in a representative capacity for two or more unit owners, so long as the subject of the litigation or administrative proceedings is one "affecting the condominium." The Petitioners' argument might have more force if the only limitation in the conferral of standing on a council of unit owners was that the legal action be one "affecting the condominium." But the inclusion of an authorization to sue "on behalf of ... two or more unit owners"

considerably restricts the limitation and changes the perspective as to what affects the condominium to that of two or more unit owners.

Present § 11–109(d)(4) traces back to Chapter 641 of the Acts of 1974 when, as Maryland Code (1974, 1974 Cum.Supp.), RP § 11–109(d)(2), it gave a council of unit owners the power "[t]o sue and be sued, complain and defend in any court." The provision was enlarged to its present form by Chapter 681 of the Acts of 1980. The likely purpose of the enlargement was to avoid a multiplicity of suits, and not to generate one. If a council of unit owners, under the laws and rules governing its operations, decides to institute a legal proceeding on behalf of two or more unit owners on matters affecting the condominium, one would reasonably expect that the unit owners would not sue and that the vehicle for the claims of the unit owners would be the council's action.

Section 11–109(d)(19), expressly stating that a council has the power "[t]o enforce the implied warranties made to the council of unit owners by the developer under § 11–131 of this title," does not alter our conclusion. The § 11–131 warranties were added to the Maryland Condominium Act by Chapter 246 of the Acts of 1981. That enactment included § 11–131(c)(4) which provided that "[a] suit for enforcement of the warranty on common elements shall be brought only by the council of unit owners." Md.Code (1974, 1981 Cum.Supp.), RP § 11–131(c)(4). Thus, it would seem that the standing that was conferred in 1980 with the enlargement of § 11–109(d)(4) was broad enough to embrace an action on the later enacted § 11–131 warranty. Further, the standing to bring a § 11–131 warranty action was necessarily implied in the 1981 enactment, which included § 11–131(c)(4). Section 11–109(d)(19) was enacted by Chapter 836 of the Acts of 1982, as was the provision in § 11–131(c)(4) which provides that "[a] suit for enforcement of the warranty on limited common elements may be brought by the council of unit owners or any unit owner to whose use it is reserved." Under § 11–101(c)(1), a limited common element may be reserved "for the exclusive use of one or more but less than all of the unit owners." A warranty

on a limited common element reserved for the exclusive use of but one owner might not fall within § 11–109(d)(4). Thus, it may well be that § 11–109(d)(19) is intended to do no more than to fill a potential void arising from the definition of a limited common element. The General Assembly may have concluded there was a need to make express the power that is necessarily implied in § 11–131(c)(4).

Our reading of § 11–109(d)(4) is consistent with the application of condominium statutes, similar to Maryland's, in the two cases to which we have been cited or which our research discloses that deal with actions by a condominium association for damages for defects in individually owned units. In *Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App.3d 291, 204 Ill.Dec. 709, 642 N.E.2d 171 (1994), a unit owners association sued the condominium project builders for conversion of assets and fraud. The jury found in favor of the plaintiff, the trial court denied the defendant's motion for judgment notwithstanding the verdict or, alternatively, for a new trial, and the defendant appealed.

The Illinois Condominium Property Act states: "The board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 Ill. Comp. Stat. Ann. 605/9.1(b) (1993). On appeal, the Illinois Appellate Court stated that the association had standing to assert the claims that related to the individual units.

"In its complaint, the plaintiff alleged that the defendants fraudulently misrepresented to unit owners that the buildings were constructed in substantial compliance with condominium plans and that the buildings were constructed in a good and workmanlike manner and free from defects. Although not all unit owners were affected by the allegedly fraudulent statements of the defendants, the Act statutorily grants the Association standing to bring an action if more than one unit is affected. ... Therefore, we determine

that the Association has standing to bring count VII of the complaint which alleges fraud."

*Sandy Creek*, 204 Ill.Dec. 709, 642 N.E.2d at 176.

In *Brickyard Homeowners' Ass'n Management Committee v. Gibbons Realty Co.*, 668 P.2d 535 (Utah 1983), a homeowners association brought an action against the builders, marketers, and sellers of a condominium project for negligent design and workmanship, breach of the implied warranty of fitness, breach of express warranty, and false representations regarding both the common elements and the individual units. The trial court denied the defendant's motion to dismiss for failure to state a claim for relief and for lack of standing and/or capacity to sue. The interlocutory appeal to the Utah Supreme Court followed.

At issue was § 57–8–33 of the Utah Code Annotated (1953, 1994 Repl.Vol.), which provides:

"Without limiting the rights of any unit owner, actions may be brought by the manager or management committee, in either case in the discretion of the management committee, on behalf of two or more of the unit owners, as their respective interest may appear, with respect to any cause of action relating to the common areas and facilities or more than one unit."

The Utah Supreme Court held that those parts of the plaintiff's negligence claim that related solely to defects within the individual units "fall[ ] squarely inside the perimeter prescribed by § 57–8–33, permitting the management to sue with respect to any cause of action relating to the common areas and facilities or more than one unit." 668 P.2d at 542.

For these reasons the Council could sue on behalf of the unit owners for claims based on the plumbing and HVAC defects that were common to many individual units at Bentley Place.

## IV

In this Part IV we consider the Petitioners' contention that the circuit court erred in the instructions to the jury

concerning implied warranties. This Court held in *Antigua Condominium Ass'n v. Melba Investors Atlantic, Inc.*, 307 Md. 700, 725, 517 A.2d 75, 87–88 (1986), and in *Starfish Condominium Ass'n v. Yorkridge Service Corp.*, 295 Md. 693, 701, 458 A.2d 805, 809 (1983), that the warranties statutorily implied under § 10–203 apply where condominium units are sold by a vendor to a purchaser. There are also implied warranties under § 11–131.[5] In sending this case to the jury the circuit court allowed the jury to consider both the Title 10 and Title 11 implied warranties together under the implied warranty count, and the court instructed the jury that no notice was required to be given by or on behalf of a purchaser to the vendor in order for the purchaser to obtain the benefit of the Title 10 warranties.

The Petitioners contend that the enactment of § 11–131 (Chapter 246 of the Acts of 1981) after the implied warranties under § 10–203 had been created (Chapter 151 of the Acts of 1970) had the effect of attaching the notice requirements for the § 11–131 warranties onto the § 10–203 warranties where the dwelling that is sold is a condominium unit. In support of this position the Petitioners point to the differences between the two warranties that might arise as to when a warranty commences and to the differences in the length of the warranty periods and in the times for suit, as well as the absence of a notice requirement in § 10–203 in contrast with the notice requirement in § 11–131.

The next step in the Petitioners' argument invokes § 11–141(c) which provides: "If the application of the provisions of this title conflict with the application of other provisions of the public general laws ... the provisions of this title shall prevail." The resolution of the "conflicts" between § 11–131 and § 10–203, the Petitioners assert, is to conform the § 10–203 warranties to § 11–131. Further arguing from that prem-

---

5. Because no distinction between Milton and Tuckerman has been argued, and both were found liable on the breach of implied warranties count (as well as others including breach of express warranty and breach of contract), the Petitioners are the "vendor" under Title 10 and the "developer" under Title 11 who made the implied warranties.

ise, the Petitioners submit that the jury instructions' erroneous omission of any notice requirement for the § 10–203 implied warranties fatally infects the verdict on the breach of implied warranties count.

The Council's position is that there is no conflict because the General Assembly intended both warranties to operate independently, so that a claim may be asserted, depending on the facts, under § 10–203 or under § 11–131, or both, so long as there is only one recovery. The circuit court and the Court of Special Appeals agreed with the Council's position, and so do we.

There is, to be sure, considerable overlap in the subject matter of the implied warranties under the two statutory sections. The § 10–203 warranties are that the improvement is "(1) [f]ree from faulty materials; (2) [c]onstructed according to sound engineering standards; (3) [c]onstructed in a workmanlike manner; and (4) [f]it for habitation." The warranty under § 11–131(b) from a developer to a unit owner provides, inter alia, "[t]hat the developer is responsible for correcting any defects in materials or workmanship in the construction of walls, ceilings, floors, and heating and air conditioning systems in the unit." With respect to the § 11–131 warranty on common elements, it applies to "the roof, foundation, external and supporting walls, mechanical, electrical, and plumbing systems, and other structural elements." § 11–131(c)(1). That warranty also provides that "the developer is responsible for correcting any defect in materials or workmanship, and that the specified common elements are within acceptable industry standards in effect when the building was constructed." § 11–131(c)(2). Rather than attempting to draw a subject matter line between the warranties under the two titles, and apparently to insure that no protection to consumers was omitted, the General Assembly made the Title 10 warranties expressly applicable to residential condominiums.

This result is accomplished by § 11–131(a)(1) which states that "[t]he provisions of §§ 10–202 and 10–203 of this article apply to all sales by developers under this title." The quoted

language was included in the introductory form of Senate Bill No. 1028 that became Chapter 246 of the Acts of 1981, by which the Maryland Condominium Act was substantially revised.

A comprehensive revision of the laws relating to condominiums had passed both houses of the General Assembly at its 1979 session as Senate Bill No. 587, but that bill was vetoed by the Governor. 1979 Md. Laws at 2234–35. The Governor appointed a commission to conduct further study and to prepare appropriate legislation. The Governor's Commission to Study the Laws Governing Condominiums reported in February 1981 (the Report). In describing § 11–131 of its proposed legislation, the Commission said:

> "This section directs its attention to implied and express warranties on individual units and common elements. The Commission agreed, without hesitation, that the implied warranties provided for in Title 10 of the Real Property Article should attach to individual units and common elements."

Report at 5.

Making the legislative intent even more clear are amendments made to Senate Bill No. 1028 in the course of passage. The General Assembly added the language in present subsection (b) that introduces the unit owner warranty and that reads: "In addition to the implied warranties set forth in § 10–203 of this article. . . ." Also added in the course of passage was the language in subsection (c)(1) that introduces the common elements warranty and that reads: "In addition to the implied warranties set forth in § 10–203 of this article. . . ."

Additionally instructive as to legislative intent is an amendment to § 11–131(a) by Chapter 836 of the Acts of 1982. Theretofore that section had provided that, "[f]or the purposes of this title," a newly constructed condominium unit included a newly converted condominium unit. The 1982 amendment changed "title" to read "article," thereby affecting § 10–203. Section 10–203 creates an implied warranty on a completed

"improvement." That term is defined to include "every newly constructed private dwelling unit." § 10–201(b). Consequently, the change from "title" to "article" in § 11–131(a) makes the § 10–203(a) warranties applicable to sales of improvements that have been newly converted into condominium units and maintains a degree of compatibility in the scope of the two implied warranties.

Further reinforcing the legislative intent that the two warranties are concurrently operative is the addition of subparagraph (2) to § 11–131(a) effected by Chapter 360 of the Acts of 1986. It reads:

"If a developer grants an improvement to an intermediate purchaser to evade any liability to a purchaser imposed by the provisions of this section, or by § 10–202 or § 10–203 of this article, the developer is liable on the subsequent sale . . . ."

In the face of the express language of § 11–131, as further illuminated by the legislative history, we conclude that the rule of construction applicable here is that set forth in § 11–141(a) which in part reads: "The provisions of this title are in addition and supplemental to all other provisions of the public general laws. . . ." Accordingly, there was no error in the circuit court's construction of §§ 10–203 and 11–131 that underlay the jury instructions.

## V

The remaining issue raised by the petition for certiorari relates only to the count predicated on negligence. The Petitioners' submission is that the damages claimed are for economic loss that is not recoverable in a claim based on negligence under the circumstances of this case. Our decisions on the issues discussed in the preceding parts of this opinion make it unnecessary to decide the question that the Petitioners present concerning the negligence count.

The amount of damages awarded to the Council by the verdict on the breach of contract count is identical to the amount of damages awarded on the negligence count. The

only issues raised in the certiorari petition that directly impact some part of the verdict on the contract count have been resolved adversely to the Petitioners in Parts I, II, and III of this opinion. If one considers that a claim based on an implied warranty is an action *ex contractu* so that the contract count in the instant matter is to be viewed as including the claim based on an implied warranty (although the case was not tried on that theory), the asserted error in the trial court's handling of the breach of implied warranties claim has been decided adversely to the Petitioners in Part IV of this opinion.

Finally, the Petitioners have briefed a number of issues that were not included in the petition for certiorari, and we do not consider them. *See* Maryland Rule 8–131(b)(1) (1999); *State v. Evans*, 352 Md. 496, 510 n. 10, 723 A.2d 423, 429 n. 10 (1999).

Accordingly, we affirm.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONERS.**