CONTRACT MATERIALS
PROCESSING, INC.,
Plaintiff,

v.

KATALEUNA GMBH CATALYSTS,
et al., Defendants.

No. CIV. AMD–98–147.

United States District Court,
D. Maryland.

Sept. 19, 2002.

Joseph S. Lyons, Law Office of Joseph S. Lyons, Towson, MD, Paul S. Richter, Richter, Miller & Finn PH, Washington, DC, for Plaintiff.

Barbara Susan Wahl, Law Office, Washington, DC, Evan Scott Stolove, Arent Fox Kintner Plotkin and Kahn PPLC, Washington, DC, for Defendants.

Benjamin Sorrells Boyd, Piper Rudnick LLP, Washington, DC, Alice A. Brown, Houston, TX, for Movant.

## MEMORANDUM

DAVIS, District Judge.

Under the Maryland Uniform Trade Secrets Act, MD.CODE ANN.COM.LAW §§ 11–1201, *et seq.* (sometimes hereinafter "the MUTSA"), attorney's fees may be recovered against a party which institutes and/or maintains a claim for misappropriation of trade secrets in bad faith. Now pending, *inter alia,* is defendants' motion for an award of attorney's fees under MUTSA. For the reasons discussed herein, the motion shall be granted and I shall award fees in the amount of $134,945.

### I.

The amended complaint in this diversity action alleged claims for misappropriation of trade secrets, conversion and breach of contract, by plaintiff Contract Materials Processing, Incorporated ("CMP"), against defendants Kataleuna GmbH Catalysts ("Kataleuna"), Tricat Management GmbH ("Tricat"), and Tricat Catalytic Products ("TCP") (collectively "defendants"). CMP sought damages of millions of dollars allegedly caused by defendants' acts and omissions in respect to alleged duties arising under three related agreements, namely, a "Technology Transfer Agreement," a "Sales Agency Agreement," and a "Research Development Agreement," entered into by CMP and Kataleuna. In particu-

lar, with respect to the Technology Transfer Agreement, CMP alleged that Kataleuna, Tricat, TCP, and/or their affiliates had misappropriated certain unidentified trade secrets which were embodied in a technology (as defined *infra* n. 1) that was transferred from CMP to Kataleuna pursuant to the Technology Transfer Agreement. Defendants denied liability and Kataleuna alleged several counterclaims against CMP.

After a long and contentious period of discovery, on September 18, 2001, I granted in substantial part defendants' motion for partial summary judgment. *See Contracts Materials Processing, Inc. v. Kata-Leuna GmbH Catalysts,* 164 F.Supp.2d 520 (D.Md.2001). Specifically, I granted summary judgment in favor of defendants as to CMP's claims for breach of the Technology Transfer Agreement, conversion, and misappropriation of trade secrets, and also as to Kataleuna's counterclaim pertaining to CMP's breach of the Sales Agency Agreement. I dismissed all claims against defendants Tricat Management GmbH and Tricat Catalytic Products. Trial of CMP's remaining claims and Kataleuna's remaining counterclaims is scheduled to commence before a jury on February 10, 2003. Upon their success in obtaining summary judgment as to CMP's claims for misappropriation of trade secrets, defendants filed the pending motion for attorney's fees as authorized by Maryland law.

## II.

A brief recapitulation of the factual context in which the dispute in this case arises and the procedural history of this litigation will frame the issues for decision. A full statement of the facts is contained in my earlier opinion. *Id.*

Plaintiff CMP is a Maryland corporation providing services to the chemical industry. In particular, it has expertise in the manufacture of additives and catalysts that aid in refining petroleum. Defendant Kataleuna is a German corporation that is also involved in the chemical industry. From 1995 until January 1997, Dr. P. Kenerick Maher ("Maher") was the Chairman of Kataleuna. During that time, 25.2% of Kataleuna was owned by an arm of the German government, the BvS, and 74.8% of Kataleuna was owned by defendant Tricat. Defendant Tricat is a German corporation, a holding company, that was managed by Maher during the period relevant to this dispute. Tricat is apparently itself a wholly owned subsidiary of Tricat Industries, Inc., an American corporation, which is not a defendant in this case. As of January 1, 1997, Tricat divested itself of all its interest in Kataleuna. Defendant TCP, another German corporation, is a wholly owned subsidiary of defendant Tricat. It was formed approximately at the same time that Tricat ceased to hold any interest in Kataleuna. Maher is the managing director of TCP.

In late 1995, CMP transferred its entire right, title and interest in certain technology (the "Technology") to defendant Kataleuna pursuant to the Technology Transfer Agreement.[1] The Technology Transfer Agreement provides as follows in part:

> [CMP] is the owner of, or has rights to, the Technology. . . .
>
> [CMP] desires to sell and [Kataleuna] desires to buy the Technology upon the

---

**1.** The Technology Transfer Agreement defined "Technology," in part, as "the inventions and all intellectual property, composition of matter and use, and process technology (whether or not patentable) and all documentation, test reports, summaries, compilations, statistical analysis, reports, notes, memoranda, writings and all other intellectual property rights and personal property which embodies such intellectual property with respect to" certain petrochemical additives, catalysts, formulae, processes, and patent applications.

terms and conditions hereinafter described

* * * * * *

Subject to the terms and conditions of this Agreement, [CMP] shall sell, assign, convey and transfer to [Kataleuna] [CMP's] entire right, title and interest in and to the Technology, including without limitation the right to make, use and sell the same anywhere in the world.... Technology Transfer Agreement at 1, 5. Thus, through the Technology Transfer Agreement, CMP transferred to Kataleuna CMP's entire FCC additives business and intellectual property, including but not limited to patent applications that CMP had filed, CMP's business plan relating to the FCC additives business, customer information, testing procedures, and manufacturing processes. In exchange, CMP was to receive 5,000 shares of Tricat Industries, Inc.'s stock, $1.9 million at closing, and a supplemental payment not to exceed $7.6 million. The supplemental payment component was to be calculated based upon the gross margin generated by Kataleuna and its subsidiaries' FCC additives business. The gist of the parties' dispute in this case is whether the Technology comported with certain warranties attested to by CMP in the Technology Transfer Agreement and whether, more generally, the Technology otherwise had genuine economic value.

In January 1998, CMP initiated this action. In its complaint, CMP alleged various breach of contract claims, demanding damages in excess of $7 million. Defendants moved to dismiss the case and on October 5, 1998, treating that motion as a motion to quash service, I granted the motion for the failure of CMP to comply with the Hague Convention in effecting service on the German entities. On December 9, 1998, CMP filed its amended complaint. The amended complaint alleged, among other things, claims for misappropriation and conversion.

In due course, further preliminary motions came on for determination. In ruling on Tricat's motion to dismiss for lack of personal jurisdiction and all defendants' motion to dismiss certain counts of the amended complaint, I concluded that "[i]t is undisputed that, pursuant to the [T]echnology [T]ransfer [A]greement, CMP assigned all of its right, title and interest in the subject matter of the technology to Kataleuna. Accordingly, [CMP] had no legitimate right to possess [the Technology].... Moreover, CMP's argument that it possesses an equitable security interest is unavailing." *August 11, 1999, Mem.Op.* at 14. Nevertheless, although I dismissed the claims for conversion, I reasoned that "[i]n light of the liberal spirit pervading the pleading requirements under the Federal Rules of Civil Procedure," the misappropriation claims would remain in the case. *Id.* at 12.

After the close of discovery, in an opinion filed on September 18, 2001, I rejected CMP's multifaceted (if not wholly incoherent) theory of misappropriation and I granted defendants' motion for summary judgment as to the misappropriation of trade secrets claims. Specifically, I reasoned as follows, in pertinent part:

Here, CMP argues that Kataleuna, TCP and Tricat have misappropriated CMP's trade secrets, namely the Technology. However, CMP has failed to generate any evidence demonstrating that the Technology qualifies as a trade secret under the Act. Nor has CMP provided any detail or description of what it claims to be trade secrets. Without sufficient detail, I am unable to determine whether specific technology concerns trade secrets. Although it was not necessary for CMP to disclose all of the details of its trade secrets, it had to

do more than merely note that the Technology involved trade secrets. *Trandes,* 996 F.2d at 661. Without such evidence, no reasonable jury could find that the Technology was not generally known or readily ascertainable by proper means. Nor could a reasonable jury conclude that the Technology derives independent economic value from its secrecy.

Defendants further argue that the CMP's misappropriation claims fail because CMP chose not to keep the Technology a secret, thus failing the second element of a trade secret. § 11–1201(e)(2). Under the Act, a misappropriation occurs when one acquires secret information by improper means or discloses the secret information without express or implied consent by a person who used improper means to acquire the information. § 11–1201(c). Again, CMP utterly fails to meet its burden to demonstrate that it took any steps to maintain the secrecy of the Technology. None of the agreements restrict Kataleuna from disclosing the information. In fact, the R & D Agreement only requires CMP, the research organization, to maintain secrecy and confidentiality. No similar restriction is placed on Kataleuna. Because CMP has failed to demonstrate that CMP took any reasonable steps to ensure the secrecy of the technology, CMP cannot claim this information as trade secrets under the Act.

In addition, not only has CMP failed to demonstrate that it took reasonable steps to maintain the secrecy of the technology, CMP has also failed to establish that any defendant misappropriated the Technology. Proving misappropriation of secret information would require CMP to show that defendants used improper means to acquire from CMP information currently in the defendants' possession or that the information was improperly disclosed to others. *See*

§ 11–1201(b). The entirety of CMP's misappropriation claim hinges upon its allegation that Kataleuna transferred the Technology to Tricat and TCP. Completely absent, however, is any evidence that the alleged transfer was improper. The record clearly shows that CMP voluntarily transferred its "entire right, title and interest in and to the Technology, including without limitation the right to make, use and sell the same anywhere in the world...." Technology Transfer Agreement at § 3. Thus, I shall grant defendants' motion for summary judgment on counts V, VIII and XII of the Amended Complaint.

*Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts,* 164 F.Supp.2d 520, 533–35 (D.Md.2001) (footnotes omitted).

Subsequently, defendants filed the pending motion for attorney's fees. Trial of the remaining claims had been calendared for July 2002, and I advised counsel that I would withhold my consideration of the motion for attorney's fees until after trial. Thereafter, the trial was rescheduled to February 2003, and I have determined that there is no good reason to further delay the adjudication of the motion for attorney's fees.

### III.

Under MUTSA, a court may award reasonable attorney's fees to a prevailing defendant if the claim of misappropriation was brought in bad faith. MD.CODE ANN. COMM.LAW II § 11–1204(1). Defendants argue that the court should award attorney's fees because CMP initiated and prosecuted its claims of misappropriation in bad faith. In short, defendants contend that CMP's failure to present any evidence to support its misappropriation claims, coupled with CMP's vexatious conduct in litigating those claims, establish CMP's

bad faith. Defendants further contend that their fee application should be allowed because they have established the requisite bad faith and because the fees incurred were reasonably necessary and well documented.

CMP has launched a host of procedural and substantive challenges to defendants' motion for attorney's fees. First, CMP asserts that defendants' motion is premature because no final appealable judgment has been entered and that, in any event, defendants have failed in several respects to comply with the requirements of the Federal Rules of Civil Procedure and this court's Local Rules in seeking an award of attorney's fees. Second, CMP argues that no attorney's fees should be allowed because defendants refuse to disclose their fee agreements with their attorneys, including, in particular, the identity of the payor of the fees. Third, CMP contends that the declarations of counsel submitted in support of the motion for attorney's fees are insufficient and should be stricken. Fourth, CMP argues that it is entitled as a matter of due process to discovery and an evidentiary hearing in respect to the motion for attorney's fees.

More substantively, CMP argues that it did not prosecute its misappropriation claims in bad faith. To counter defendants' assertions that it acted in bad faith, CMP relies entirely on the evidence I previously concluded was insufficient to permit the misappropriation claims to survive summary judgment in my September 18, 2001, opinion. Nevertheless, CMP properly invites me to reexamine that evidence to determine, not whether summary judgment was proper, but whether it instituted and prosecuted the misappropriation of trade secrets claims in bad faith. Specifically, CMP once again argues that it had a good faith basis for contending that: (1) the Technology qualifies as a trade secret, the secrecy surrounding which CMP took reasonable steps to maintain; (2) CMP retained an interest in the Technology, notwithstanding the plain language effecting an unconditional conveyance of the Technology to Kataleuna in the Technology Transfer Agreement; and (3) CMP had a good faith basis for the factual and legal arguments it offered in support of the contention that there had been a misappropriation of the Technology. Finally, CMP asserts that defendants' evidence detailing their counsel's time records is inadequate.

For the reasons set out herein, I reject CMP's procedural and substantive challenges to the motion for attorney's fees. I find that defendants have carried the burden imposed upon them by Maryland law, frankly by a very large margin, to show clearly and convincingly that CMP initiated and maintained its trade secrets claims in bad faith. Furthermore, the record shows that the amount of the fees incurred by defendants was reasonable and necessary to enable counsel adequately to respond to the misappropriation claims. Accordingly, I shall allow an award of attorney's fees pursuant to the Maryland Uniform Trade Secrets Act.

### IV.

I shall first address CMP's procedural challenges to the motion for attorney's fees. Not one of those challenges survives scrutiny.

### A.

CMP argues that the motion for attorney's fees is premature and that, in any event, it fails to comply with the requirements of the applicable rules of procedure, that is, Fed.R.Civ.P. 54 and Local Rule 109.2. These contentions lack merit.

Rule 54(d)(2)(B) provides, in part, that a motion for attorney's fees "must be filed and served no later than 14 days after entry of judgment; must specify the judg-

ment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought...." Fed.R.Civ.P. 54(d)(2)(B). Consonant with Rule 54(d)(2)(B), Local Rule 109.2 provides as follows, in part:

a. [A]ny motion requesting the award of attorneys' fees must be filed within fourteen days of the entry of judgment. The memorandum [in support thereof required by subsection b.] must be filed within thirty-five days from the date the motion is filed....

b. Any motion requesting the award of attorneys' fees must be supported by a memorandum setting forth the nature of the case, the claims as to which the party prevailed, the claims as to which the party did not prevail, a detailed description of the work performed broken down by hours or fractions thereof expended on each task [and] the attorney's customary fee for such like work....

D.Md. Local Rule 109.2 (July 2001). Defendants have scrupulously satisfied the above requirements.

CMP argues that defendants' motion is premature because the court's September 18, 2001, order is not a "judgment" as described in Rule 54(a); that is, it is not "[an] order from which an appeal lies." It is clear, however, from the plain language of the rule that the 14 day period marks an outer temporal limit for filing a motion for attorney's fees; it does not establish an unalterable 14 day *post-final-judgment* window *only within which* a motion for an award of attorney's fees may be filed. Indeed, the Advisory Committee Notes to the 1993 Amendments to Rule 54 establish this point, describing the 14 day period a "deadline":

Subparagraph (B) provides a deadline for filing motions for attorneys' fees—14 days after final judgment unless the court or statute specifies some other time.

The purpose of requiring a motion for attorney's fees to be filed no later than 14 days after entry of judgment is to "permit the court to resolve fee disputes while the services that were performed [are] still ... freshly in mind." 10 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2680 (3d ed.1998). As defendants aptly note, this case presents unique factual circumstances as to this motion. In particular, the award sought goes only to CMP's misappropriation claims. All of these claims have been resolved completely by the September 18, 2001, order. Moreover, with respect to two of the defendants, Tricat and TCP, all other claims have been resolved. The only matter remaining in this case as to those defendants is their right to recover attorney's fees for the defense of the misappropriation claims. Thus, defendants' motion for attorney's fees is not premature. *Accord FAS Technologies, Ltd. v. Dainippon Screene Mfg. Co., Ltd.,* 2001 WL 1159776, *6 (N.D.Cal. September 21, 2001) (citing *Scott–Harris v. City of Fall River,* 134 F.3d 427 (1st Cir.1997)).

CMP also contended in its opening brief that defendants' motion should be denied because the motion failed to provide the detailed information, including a precise amount or an estimate of the amount of attorney's fees being sought, the relevant judgment, and the claims defendants had won or had lost. These contentions are unavailing. As set forth above, under Local Rule 109.2.a, the memorandum detailing the claims as to which the party prevailed and detailing a description of, and the charges for, the work performed "must be filed within thirty-five days from the date the motion is filed...." Here, defen-

dants' memorandum was timely filed and served inasmuch as CMP consented to, and I approved, extensions of time for defendants to supply the detail required by Rule 54(d)(2)(B) and Local Rule 109.2.b. Accordingly, defendants have complied with the procedural requirements of Rule 54(d)(2)(B) and this court's Local Rules.

### B.

■ CMP next argues that defendants must "provide all fee and reimbursement agreements, and billing and payment details pertinent to the BvS and all other interested persons," because the BvS "likely has been paying or reimbursing for attorney's fees and other expenses for the defendants." *CMP's Oct. Opp.* at 2. This contention lacks merit as neither Rule 54(d)(2)(B) nor Local Rule 109.2 requires such disclosure.

Defendants correctly note that under the Advisory Committee Notes to the 1993 Amendments to Rule 54, courts may wish to have a party disclose a fee arrangement that may affect the value of the fees to be awarded or the apportionment of fees among counsel or parties. Despite CMP's contentions, this case does not present circumstances that require or even justify the disclosure the defendants' fee arrangements. Circumstances that would warrant such a disclosure, for example, occur where an attorney and her client may have had a contingent fee arrangement or the court must be involved in the implementation of a settlement agreement that may incorporate a fee award. In particular, the Advisory Committee Notes identify the following types of arrangements that may be of interest to a court: those "between attorneys sharing a fee to be awarded, and between adversaries made in partial settlement of a dispute where the settlement must be implemented by the court...." Advisory Committee Notes, 1993 Amendments, Fed.R.Civ.P. 54.

CMP fails to explain why, under the circumstances of this case, there might be significance in knowing whether a third party may be paying or reimbursing a party for its legal fees. In reality, it appears that CMP is once again attempting to find support for its theory that the BvS is the real party in interest and should have been joined pursuant to Fed.R.Civ.P. 17(a), a contention that I have previously rejected on more than one occasion. Accordingly, CMP's disclosure request shall be denied.

### C.

■ CMP has moved to strike the declarations, prepared and submitted in support of defendants' motion for attorney's fees, of defendants' counsel, Barbara S. Wahl, Esq., and Evan Stolove, Esq., each of the law firm Arent Fox Kintner Plotkin & Kahn, PLLC. I shall deny the motions to strike for the following reasons.

On January 15, 2002, CMP moved to strike the essential portions, paragraphs 2, 6, and 7 through 15, of the December 21, 2002, Wahl Declaration. CMP contends that these paragraphs and the corresponding exhibits are not based on Wahl's personal knowledge and contain inadmissible hearsay and conclusory statements. *CMP.'s Oct. Mem. in Supp. of Mot. to Strike ("CMP's First Mot. to Strike")* at 4–5.

In essence, the thrust of CMP's contention is that Wahl erred in delegating some or all of the activities associated with the fee petition. CMP's argument is nonsensical as there is no obligation that Wahl personally perform each and every task. Delegation is permissible, and there is no requirement that every individual involved in the process of recording time entries, preparing accounting files and preparing the fee petition itself submit an affidavit or declaration. Here it is clear that Wahl

was ultimately the person in charge of the project of reviewing the pleadings, correspondence, transcripts, and time entries. As such, there is nothing improper in Wahl providing a description of the activities that took place.

In any event, it is plain from Wahl's Declaration that she did participate personally in the review and adjustment of all entries. The Wahl Declaration specifically attests that Wahl supervised or performed the various tasks, which are themselves described in detail. *See Wahl Decl.* ¶ 1 ("This declaration, and its appendices, (a) detail the work performed in this action by me or under my supervision...."). CMP provides no basis for its contention that Wahl did not actually perform the activities she attests she performed. Specifically, Wahl reviewed each and every entry included in exhibits submitted to the court. Wahl made adjustments to the entries to include or exclude a specific entry, and she determined the amount of time related to the defense of CMP's misappropriation claims.

Wahl describes the process in detail:

6. In my capacity as the lead attorney on this matter, I have had collected and reviewed all of the records reflecting time billed by Arent Fox to the Defendants in this matter. In addition, I have caused the pleadings, correspondence, hearing transcripts and deposition transcripts to be collected and reviewed.

7. I have caused the fees incurred in investigating the misappropriation claims, as well as the work performed in defending against those claims, to be identified and separated from the rest of the fees incurred by Defendants in this action....

\*    \*    \*    \*    \*    \*

12. Defendants have not sought fees for time spent on work that was substantially unrelated to the misappropriation claims, was too difficult to discern as being related primarily to the misappropriation claims or was unnecessarily duplicative or otherwise unproductive.

13. The hours ... detailed on Exhibits A through D are based on contemporaneously-maintained time records of the attorney or paralegal who performed the work. These records are and have been kept in the regular course of the business activity of Arent Fox, and it is and has been the regular practice of Arent Fox to require and use such reports to determine the fees and costs billed to its clients.

*Wahl Decl.* ¶¶ 6, 7, 12, 13.[2]

CMP filed a second motion to strike, urging that the declaration by Wahl dated February 12, 2002, which defendants submitted in opposing CMP's first motion to strike, and a declaration by Stolove, the primary associate working on this case, not be considered. In its second motion to strike, CMP argues that these declarations contain "vague, incompetent and inadmissible blabber testimony which should be stricken...." *CMP's Second Mot. to Strike* at 2. CMP's argument, which consists of less than a page, provides no authority, analysis, or coherent explanation as to why these declarations and attached exhibits should be stricken.

---

**2.** CMP also argues that the exhibits to the Wahl Declaration cannot be used because they were prepared for the attorney's fees motion, and as such, constitute *post facto* allocations of time records contrary to Mary-land law. *CMP's First Mot. to Strike* at 5–7. As discussed in text *infra* at 31–32, CMP's interpretation of the relevant case law is rejected.

In sum, CMP's motions to strike the declarations of defendants' counsel lack merit and shall be denied.

### D.

■ In its final procedural challenge to the motion for attorney's fees, CMP contends that it has a due process right to an evidentiary hearing, which would allow cross examination of defendants' witnesses and presentation of testimony from its own witnesses, before any determination regarding attorneys' fees can be made. In support of its due process contention, CMP relies primarily on a state case, *Johnson v. Baker*, 84 Md.App. 521, 581 A.2d 48 (1990), *cert. denied*, 322 Md. 131, 586 A.2d 13 (1991). In *Baker*, the plaintiff contended that the trial court "violated his constitutional guarantee of due process when [the court] imposed sanctions on Johnson without first affording him a full evidentiary hearing, including the opportunity to present witnesses and opportunity for cross-examination." 581 A.2d at 55. The court awarded attorney's fees under Maryland Rule 1–341, on the basis that plaintiff's claim was brought in bad faith and without substantial justification. *Id.* at 51. The Court of Special Appeals noted that "[c]onstitutional due process applies to the assessment of attorney's fees for litigation misconduct [and][a] party should be provided fair notice and an opportunity to be heard on the record," 581 A.2d at 56–57 (citations omitted). Nevertheless, the court discerned no abuse of discretion or denial of due process in the trial court's failure to hold an evidentiary hearing. *Id.* at 58–59.

The court observed that, as in other contexts, "due process is a flexible concept, [calling] only for those procedural protections that the particular situation demands." *Baker*, 581 A.2d at 57. The court reasoned that because plaintiff was afforded fair notice and an opportunity for oral argument on the record, "[t]he risk

that the circuit court judge erroneously deprived [plaintiff] of his interest in a fair and proper determination because he permitted only oral argument from the parties rather than presentation of witnesses and cross-examination seems minimal." *Id.* The court stressed that the trial court had the record before it and that plaintiff had failed to establish that it had any "new evidence ... to demonstrate that there was a basis to his action in law or in fact or that there was a purpose to it other than harassment or coercion...." *Id.* As in the case at bar, the trial court had the entire record before it and "could ... rely on its own knowledge and experience in evaluating the justification of [plaintiff's claim]." *Id.* at 58. Even if *Baker* were binding on this court, which it is not, it does not compel the conclusion that an evidentiary hearing is required in this case; it supports the contrary conclusion.

Indeed, the Fourth Circuit has held that *"[d]ue process does not require an evidentiary hearing before sanctions are imposed,* even when sanctions are imposed in part under the improper purpose prong of Rule 11." *In re Kunstler*, 914 F.2d 505, 521 (4th Cir.1990) (emphasis added). In reaching its determination that no evidentiary hearing was required in that case, the Fourth Circuit quoted the reasoning of *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir.1987): "When an attorney has failed to present necessary factual support for claims despite several opportunities to do so, ... further hearing on the sanctions issue may well be not only unnecessary but also a waste of judicial resources." *Kunstler*, 914 F.2d at 521. Contrary to CMP's assertions, the Court specifically cautioned that "satellite litigation over sanctions and separate hearings should be limited to the extent possible." *Id.*

The present case shares many of the same indicia which weighed against the

need for an evidentiary hearing in *Kunstler*. There, the district court judge imposing the sanctions was the same judge who had participated in the underlying proceedings. *Id.* at 522. Moreover, the district judge had studied the parties' pleadings and motions, including the papers relevant to defendants' motions for summary judgment and motions to dismiss in making his determination as to an award of attorney's fees as a sanction under Fed.R.Civ.P. 11. *Id.* As is the case here, the plaintiff in *Kunstler* was permitted to submit affidavits and legal argument to counter defendant's motion for sanctions. In addition, here, unlike the plaintiff in *Kunstler*, CMP also has had ample opportunity to respond in writing to contest the fee statements submitted. *Id.* ("Appellants were given no opportunity to contest the fee statements."). Although the district court heard oral argument, it did not grant an evidentiary hearing; the Fourth Circuit held that due process had been satisfied. *Id.* at 522.

There is no question that here, CMP has had many opportunities to demonstrate a legitimate factual and legal basis for its misappropriation of trade secrets claims. These opportunities were available to CMP when it (1) responded to the defendants' motion to dismiss; (2) argued in support of its own motion to compel discovery; (3) responded to defendants' various motions for protective orders; (4) responded to defendants' motion for summary judgment; and (5) urged reconsideration of the order dismissing the misappropriation claims. Nevertheless, CMP has failed to proffer any legitimate legal or factual basis for its spurious misappropriation claims.

Moreover, CMP's true motivation for insisting it is entitled to an evidentiary hearing is transparent. CMP makes plain its hope that if I conduct an evidentiary hearing, I might *"sua sponte"* correct the alleged errors inherent in my previous rulings:

> It is quite possible the Court will recognize *sua sponte* upon a careful review of these materials (and/or at the evidentiary hearing) that the Court grievously misunderstood the record before it at the time of its September 28, 2001 rulings, and thereby made basic rulings which were clearly erroneous in view of the "facts" in the record and the law; CMP submits that if the Court should achieve such recognition, it should, in the interest of justice, promptly vacate its order dismissing CMP's misappropriation and breach of contract claims on summary judgment.

*Mem. in Supp. of CMP's Mot. for Hearings* at 11 (footnote omitted). CMP's attempt to seek a further reconsideration of the court's ruling must be denied. Indeed, the record will reflect that CMP filed a raft of motions in connection with the pretrial conference in this case. Several of those motions were thinly-disguised attempts to impel me to restore the misappropriation claims to the case. In sum, my "participation in the proceedings [has been] adequate to give [me] full knowledge of the relevant facts [related to the motion for an award of attorney's fees] without the necessity of an evidentiary hearing." *Kunstler*, 914 F.2d at 522. Accordingly, a healthy respect for CMP's right to due process does not require that an evidentiary hearing be held in this case.

Likewise, CMP's request for pre-hearing discovery relating to the amount sought in the motion for attorney's fees shall be denied. Yet again, CMP cites basic notions of due process, but provides no authority for such an all-encompassing right to discovery. In any event, CMP is plainly not entitled to the original papers of defendants' counsel, as they are attorney work product and are not discover-

able. Fed.R.Civ.P. 26(b)(3). As discussed *infra,* CMP fails to explain why the summaries provided by defendants are not sufficient. Moreover, CMP fails to explain the relevance of many of the documents it wishes to examine and asserts simply that "the pertinence of these readily available documents should be obvious." *Mem. in Supp. of CMP's Mot. for Hearings* at 13. This conclusory assertion is scant support for permitting the sort of satellite litigation CMP is angling for in its request that it be permitted to take discovery as to the motion for attorney's fees. Accordingly, the request shall be denied.

\*     \*     \*     \*     \*     \*

For the reasons set forth, neither singly nor in combination do any of CMP's procedural challenges to the motion for attorney's fees have merit.

## V.

### A.

■ Under the Maryland Uniform Trade Secrets Act, a court may award reasonable attorney's fees to a prevailing party if the claim of misappropriation of trade secrets was brought in "bad faith." Md.Code Ann.Comm.Law II § 11–1204(1). To succeed on a request for attorney's fees under the MUTSA, there must be "clear evidence that the action [was] entirely without color and taken for other improper purposes amounting to bad faith." *Optic Graphics, Inc. v. Agee,* 87 Md.App. 770, 591 A.2d 578, 588 (1991), *cert. denied,* 324 Md. 658, 598 A.2d 465 (1991) (citations omitted); *id.* (Bad faith exists when the case does not present a colorable claim and the action was prosecuted "vexatiously, wantonly, or for oppressive reasons."). Significantly, the "bad-faith exception for the award of attorney's fees is not restrict-ed to cases where the action is filed in bad faith ... [but] may be found ... in the conduct of the litigation." *Id.* (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)).

In the same vein as the Maryland test for "bad faith" under MUTSA, courts considering the attorney's fees provision under the California Uniform Trade Secrets Act have reasoned persuasively that "bad faith" exists when the court finds "[(1)] objective speciousness of the plaintiff's claim and [ (2) plaintiff's] subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets." *Gemini Aluminum Corp. v. California Custom Shapes, Inc.,* 95 Cal.App.4th 1249, 1262, 1262–65, 116 Cal.Rptr.2d 358, 367 (2002) (approving the two-part test applied in *Stilwell Dev., Inc. v. Chen,* 11 U.S.P.Q.2d 1328 (C.D.Cal.1989)); *accord Alamar Biosciences, Inc. v. Difco Labs., Inc.,* 1996 WL 784495, at \*1 (E.D.Cal. February 23, 1996) (collecting cases).[3]

"Objective speciousness exits where there is a complete lack of evidence supporting Plaintiff's claims." *Computer Econ., Inc. v. Gartner Group, Inc.,* 1999 WL 33178020, at \*6 (S.D.Cal. December 14, 1999). "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." *Id.* In proving subjective misconduct, a prevailing defendant may rely "on direct evidence of plaintiff's knowledge ... and [subjective misconduct] may also be inferred from the speciousness of plaintiff's trade secret claim and its conduct during litigation." *Id.; see also Kunstler,* 914 F.2d at 518 ("[W]hether or not a pleading has a foun-

---

**3.** The attorney's fees provision of the California Uniform Trade Secrets Acts is found at Cal.Civ.Code § 3426.4 In language that is identical to the MUTSA, § 3426.4 states "[i]f a claim of misappropriation is made in bad faith ... the Court may award reasonable attorney's fees to the prevailing party...."

dation in fact or is well grounded in law will often influence the determination of the signer's purpose. . . .") (applying Fed. R.Civ.P. 11). The "knowing persistence in an invalid claim" demonstrates subjective bad faith. *Stilwell Dev., Inc. v. Chen,* 1989 WL 418783, 11 U.S.P.Q.2d 1328, 1332 (C.D.Cal.1989).[4] In *Stilwell,* a leading case,

> [t]he court awarded attorney fees [after finding] that as to the objective component, the plaintiffs produced no evidence of confidentiality of the information or misappropriation. As to the subjective component, the court inferred from the complete failure of proof that the plaintiffs must have knowingly and intentionally prosecuted a specious claim.

*Gemini Aluminum Corp.,* 95 Cal.App.4th at 1262, 116 Cal.Rptr.2d at 368 (affirming award of attorney's fees for bad faith prosecution of misappropriation claim).

CMP argues vigorously that *Stilwell* and the cases that have embraced its two-part test are irrelevant to the pending motion. CMP expresses a preference for the application of the more awkward "without color" standard mentioned in the Maryland cases, rather than *Stilwell's* "objective speciousness" standard, in my determination of whether defendants have established by clear and convincing evidence CMP's bad faith pursuit of its misappropriation claims. Nevertheless, it is undisputed that "Maryland's trade secrets statute . . . closely tracks the Uniform Trade Secrets Act," *Avtec Systems, Inc. v. Peiffer,* 21 F.3d 568, 574 (4th Cir.1994), and, although I believe

that any differences between the two formulations are more linguistic than substantive, I have no hesitation in concluding that Maryland's Court of Appeals would find persuasive the more workable "objective speciousness" elaboration on the bad faith requirement applied in the state and federal cases construing the identical attorney's fees provision in the California Uniform Trade Secrets Act. Accordingly, I shall apply the *Stilwell* test in the case at bar.

### B.

■ As was true of the plaintiffs in *Gemini Aluminum* and *Stilwell,* CMP has utterly failed to identify any evidence in some respects, and has failed to identify *admissible* evidence in other respects, in support of the elements of its ostensible misappropriation of trade secrets claims. Moreover, despite several warnings to CMP about the evident lack of merit in its misappropriation claims, CMP has continued to pursue these baseless claims in reckless disregard of their speciousness. Accordingly, I find by clear and convincing evidence that CMP's bad faith pervades this record.

### 1.

The objective speciousness of CMP's misappropriation of trade secrets claim could not be more manifest.

To prove misappropriation of a trade secret [under MUTSA] . . ., a plaintiff must show (1) that it possessed a valid

---

**4.** *See also Computer Econ., Inc.,* 1999 WL 33178020, at *6 ("The numerous warnings plaintiff received from defendant's counsel, the facial deficiencies revealed in the answers provided by its Rule 30(b)(6) witness, plaintiff's arguments in opposition to defendant's . . . motion for summary judgment and the amount of time plaintiff had to investigate its trade secret misappropriation claim, taken together, provide strong circumstantial evidence that plaintiff knew or was reckless in not knowing that it could not provide evidence of trade secrets or misappropriation."). Also, a party's "tactics during the course of . . . litigation" can support a finding as to its "underlying motives" for purposes of determining whether the party pursued the litigation in bad faith. *Johnson v. Baker,* 84 Md. App. 521, 581 A.2d 48, 53 (1990), *cert. denied,* 322 Md. 131, 586 A.2d 13 (1991).

trade secret, (2) that the defendant acquired its trade secret, and (3) that the defendant knew or should have known that the trade secret was acquired by improper means. Md.Com.Law II Code Ann. § 11–1201(c)(1).... The essential element of a misappropriation claim is the "abuse of confidence or impropriety in the means of procurement." *Space Aero Prods. Co. v. R.E. Darling Co.*, 238 Md. 93, 208 A.2d 74, 84, *cert. denied*, 382 U.S. 843, 86 S.Ct. 77, 15 L.Ed.2d 83 (1965).

*Trandes Corp. v. Guy F. Atkinson Corp.*, 996 F.2d 655, 660 (4th Cir.), *cert. denied*, 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993) (citations and footnote omitted). CMP's effort to avoid summary judgment as to its misappropriation claims was a singular failure, and my September 18, 2001, opinion explicating the utter lack of substantive legal merit in CMP's misappropriation of trade secrets claims will speak for itself. *See* 164 F.Supp.2d 520. Two issues bear special emphasis.

First, as CMP's claims were brought under the Maryland Uniform Trade Secrets Act, CMP was required to project evidence sufficient to establish that it took reasonable efforts under the circumstances, i.e., a voluntary sale of alleged trade secrets, "to maintain ... secrecy." *See* Md.Code Ann.Com.Law II §§ 11–1201(e)(2). CMP's showing on this element fell well short in providing a factual basis for a reasonable finding by a rational fact finder that it attempted to maintain the secrecy of the Technology *after it had transferred its interest in the Technology to Kataleuna.* As I previously noted, CMP "sold the Technology to Kataleuna *without exacting any agreement from Kataleuna to maintain the confidentiality of the Technology.*" *Contracts Materials Processing, Inc.*, 164 F.Supp.2d at 535 n. 25 (emphasis added). It is clear on this record that, as to the issue of whether it took reasonable steps to maintain secrecy

of its alleged trade secrets, all of the various strands of CMP's misappropriation theory—*e.g.*, that Kataleuna impliedly agreed within the four corners of the Technology Transfer Agreement not to disclose the Technology to any third party, including one of its corporate affiliates, or that there existed a fiduciary relationship between CMP and Kataleuna which precluded such disclosure by Kataleuna— are fabricated, *post hoc* notions lacking a scintilla of factual or legal support. Even more specious is CMP's convoluted argument that it reasonably relied on alleged but unproven oral undertakings which survived the carefully-constructed and plainly-worded Technology Transfer Agreement in seeking to press its misappropriation of trade secrets claims. The utter lack of factual coherence or legal support for CMP's theories are fatal to CMP's assertion that it possessed a good faith belief in the objective reasonableness of pursuing its MUTSA claims.

Even now, in its opposition to the motion for attorney's fees, CMP fails to proffer any evidence that it made reasonable efforts to maintain the secrecy of the Technology subsequent to its transfer of the Technology to Kataleuna. Instead, CMP continues to argue that the court was wrong in granting summary judgment on the misappropriation claims and it relentlessly rehashes irrelevant and inadmissible evidence. CMP argues that "[it] is entitled to rely upon all of the evidence, including the evidence which the Court refused to consider [in granting partial summary judgment in favor of defendants]...." *CMP's Mem. in Opp. dated Jan. 15, 2002 ("CMP's Jan. Opp.")* at 6. To the extent that CMP's actual contention is that I must take a "fresh look" at the evidence to determine whether, notwithstanding the fact that I have previously granted summary judgment in favor of defendants, CMP's pitiful showing in oppo-

sition to the motion for summary judgment was nevertheless not so vacuous as to support a finding of "objective speciousness," I agree that such a "fresh look" is required. *Cf. Kunstler,* 914 F.2d at 519 ("The existence of baseless allegations does not alone require a finding of improper purpose, because inexperience or incompetence may have caused their inclusion in a pleading....") (applying Fed. R.Civ.P. 11). Nevertheless, having taken that "fresh look," I unhesitatingly conclude that "objective speciousness" is amply demonstrated.

Second, CMP also failed to identify any admissible probative evidence that defendants acquired the Technology through improper means. *Trandes Corp.,* 996 F.2d at 660 ("The essential element of a misappropriation claim is the 'abuse of confidence or impropriety in the means of procurement.' ") (citation omitted). CMP contends that its reliance on alleged oral representations and a non-disclosure agreement with a third party that was superceded by the Technology Transfer Agreement demonstrate that its claims were not objectively specious. Manifestly, however, CMP never demonstrated the existence of a legitimate basis for relying upon either of these as a basis for its claims. As I explained in the September 18, 2001, opinion, "[t]he Technology Trans-

fer Agreement could not be more clear...." 164 F.Supp.2d at 531 n. 19. That is, "the Technology Transfer Agreement clearly and unambiguously expresses the parties' intentions and obligations [and] ... repeatedly states that CMP transferred its entire right in the Technology to Kataleuna without any restriction on Kataleuna's right to transfer the Technology." *Id.* at 531. *See supra* p. 735. The circumstances of this case are clear: sophisticated parties, represented by counsel in the negotiation of a meticulously-crafted written contract memorializing a complex, multi-million dollar business transaction, have a dispute over the proper performance of their agreement. One such party seeks to convert a mere breach of contract claim into a claim for misappropriation of trade secrets through the simple allegation that oral promises surviving the written contract provide a good faith "cover" for an otherwise spurious misappropriation claim. I am not persuaded.[5]

In sum, it is clear that CMP's ostensible misappropriation of trade secrets claims are wholly devoid of any factual or legal foundation and that they were alleged and maintained in objective speciousness.[6]

2.

The subjective misconduct prong of the test for bad faith is established in this

---

5. CMP's rejoinder to this reasoning is that the conclusion (which CMP insists on describing as a "finding") that CMP transferred its entire FCC additives business to Kataleuna through the Technology Transfer Agreement proves that there are "oral components" to the Technology Transfer Agreement. *CMP's Jan. Opp.* at 5. CMP asserts that the basis of this contention is the fact "that there is no written provision" expressly stating that CMP transferred its entire FCC additives business. *Id.* This is yet another example of CMP's distorted view of contract interpretation which has given rise to the pending motion.

6. In addition to the deficiencies discussed in text, CMP has failed to marshal any evidence

that the *entirety* of the Technology qualified as a trade secret. *See Contracts Materials Processing,* 164 F.Supp.2d at 533–35. Not only does CMP fail to demonstrate that it possesses such evidence, CMP argues here, incongruously, as it argued in opposition to defendants' motion for summary judgment as to the misappropriation claims, that it had no obligation or burden to demonstrate the existence of any particular trade secret within the collection of items comprising the Technology. *See CMP's Oct. Opp.Mem.* at 10 n. 7. *But see Trandes Corp.,* 996 F.2d at 661 ("[Plaintiff] had to describe the subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade secret.").

record by clear and convincing evidence. Specifically, a brief review of just some of CMP's conduct in this case shows that the undisputed facts militate heavily in favor of a finding of "subjective misconduct" or, what amounts to the same thing, "improper purpose."

The parties engaged in months of extended and contentious discovery. Much of CMP's discovery centered around its "conspiracy theory" of misappropriation. CMP's tactics resulted in defendants (and non-party Tricat Industries, Inc.) filing three separate motions for protective orders and in their having to respond to multiple unsuccessful motions to compel filed by CMP.

CMP issued a series of four Rule 30(b)(6) deposition notices to each of the three defendants and to non-party Tricat Industries, Inc. After CMP's counsel refused to meaningfully narrow the scope of the notices, defendants and Tricat Industries, Inc., moved to quash and for a protective order. On October 12, 1999, I granted that motion, concluding: "I agree with defendants and Tricat Industries, Inc. that *the unmitigated reckless extravagance of the deposition notices and subpoena served by plaintiff robs such process of any veneer of legitimacy. The notices shall be quashed."* (Emphasis added).

CMP served another set of deposition notices several weeks later and defendants and Tricat Industries, Inc., again sought relief via a motion to quash and for a protective order filed on December 3, 1999. Although CMP filed an opposition to that motion on December 14, 1999, two days later, at a hearing before the court, counsel for CMP represented that he thought he had already told the defendants that CMP was withdrawing those notices. *See* December 16, 1999, Hearing Tr. at 70.

At the December 16, 1999, hearing, I also addressed a round of motions to compel filed by CMP. CMP does not deny that the bulk of the documents sought by CMP pertained to the misappropriation claim. I denied all of the relief sought by CMP in those motions, observing that CMP's "attempts at discovery in this case" went beyond being recklessly extravagant, but were in fact "promiscuous" and "exactly the kind of thing ... that people point to when they talk about discovery abuse." *See* December 16, 1999, Hearing Tr. at 3–4.

Finally, defendants assert that the timing of the filing of the amended complaint is telling. CMP initiated this action when it learned in late 1997 that the Tricat entities might be able to attract a cash infusion from new investors. According to defendants, CMP filed the present lawsuit hoping that the Tricat entities would agree to a quick settlement so as not to discourage the potential investors. Defendants note that the original complaint demanded damages of $7.6 million based on alleged sales, although the first "Supplemental Payment" based on sales was not yet due under the Technology Transfer Agreement. Compl., Count IV (filed January 15, 1998). Defendants also note that the original complaint contained no mention of the alleged tort of misappropriation, nor did it allege any improper transfer of trade secret information or in any way intimate that the defendants had acted improperly in connection with Kataleuna's transfer of the FCC additives business to Tricat Catalytic Products GmbH. It was not until December 1998, almost a year and a half after CMP was first notified of the transfer, that it asserted in this case that the transfer was improper.

In light of the blatant speciousness of CMP's misappropriation claims, coupled with CMP's conduct in litigating these claims, I find that CMP initiated and maintained its misappropriation of trade secrets claims in bad faith under MUTSA. Ac-

cordingly, defendants' motion for attorney's fees shall be granted.

## VI.

■ CMP also opposes defendants' request for fees on the grounds that defendants' evidence detailing their attorneys' time records and the amount sought is inadequate. CMP asserts that "an attorney who intends to claim compensation . . . for defending a multiple-count claim . . . [must] keep records that accurately reflect what time is expended on specific aspects of the case." *See CMP's Jan. Opp.Mem.* at 7 (citing *Beery v. Maryland Med. Lab., Inc.,* 89 Md.App. 81, 597 A.2d 516 (1991), *cert. denied,* 325 Md. 329, 600 A.2d 850 (1992), and *Optic Graphics,* 87 Md.App. 770, 591 A.2d 578.). According to CMP, unless a party's lawyer records her time by identification of the specific claim that the task related to when she recorded her time, the party is barred from seeking attorney's fees. *CMP's Jan. Opp.Mem.* at 8. Otherwise, CMP asserts, the party will be guilty of having created a *"post facto arbitrary apportionment[ ] of generalized time records"* contrary to the holdings in *Optic Graphics* and *Beery. Id.*

I agree with defendants that CMP has misread the cases on which it relies for this argument. Neither *Beery* nor *Optic Graphics* mandates the onerous burden CMP would impose on counsel, and both cases allow after-the-fact segregation of expenses, so long as counsel maintained sufficient records and takes the time needed properly to segregate those records. In *Beery,* the fee petition stated generally that total counsel fees were $36,000. As there were four claims in the case, three of which were held to have been pursued in bad faith, counsel simply divided his total fees into fourths and requested three-fourths of $36,000. 597 A.2d at 525. Because there was no basis to conclude that counsel had worked on each count in a proportionally equal amount, the Maryland

Court of Special Appeals stated that such an approach "simply will not suffice." *Id.* at 526. While the *Beery* court noted the difficulty involved in separating out expenses among different claims and suggested that to achieve this goal counsel "may have" to keep separate records, *id.* 527, the *Beery* court did not impose a threshold requirement that to support and award of attorney's fees, counsel must segregate all time records among different claims on a "real time" basis. *Id.* Furthermore, in *Optic Graphics,* the Court of Special Appeals specifically authorized the procedure utilized by defendants' counsel here, *i.e.,* to separate the fees after the fact:

> If counsel can separate the fees and expenses generated by the defense of the trade secrets claim from those generated by the defense of the breach of contract claim, then we think that the trial court appropriately may impose sanctions for bad faith with respect to the breach of contract claim.

87 Md.App. at 795, 591 A.2d at 590. I am satisfied that counsel have been faithful to the requirements of the Maryland cases in compiling the support for the motion for attorney's fees.

CMP also objects to the summaries of time entries provided by defendants' counsel. CMP provides no authority that such summaries are inappropriate, and courts have instructed counsel to the contrary. In *Craig v. Christ,* 1999 WL 1059704, at *3 (S.D.Ind. September 10, 1999) (assessing attorney's fees and costs under 42 U.S.C. § 1988), the court explained that "the billing summaries of records made at or near the time recorded are, in general, appropriate for purposes of a fee petition . . . [,][m]oreover, the Supreme Court has instructed attorneys to use 'billing judgment' in submitting fee petitions . . . so some editing of the original, raw records is

expected." *Id.* at \*10 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

In *Milton Co. v. Council of Unit Owners of Bentley Place Condo.*, 121 Md.App. 100, 708 A.2d 1047, 1057 (1998), *aff'd*, 354 Md. 264, 729 A.2d 981 (1999) (applying Maryland Consumer Protection Act), the appellant argued that the fee award was improper as the appellee "never presented any contemporaneous time records to establish how much time its attorneys spent working on the case." The court rejected the argument, holding that the trial court "enjoys a large measure of discretion in fixing the reasonable value of legal services" and that "the record need not contain evidence specifically delineating the number of hours spent by counsel because the record itself discloses the nature of the proceedings...." *Id.* On that basis, the court affirmed a fee award of $500,000.

Similarly, in *Zachair, Ltd. v. Driggs*, 135 Md.App. 403, 762 A.2d 991 (2000), *cert. denied*, 363 Md. 206, 768 A.2d 54 (2001), the court affirmed a modified jury damages verdict which included an award of $346,000 for attorney's fees incurred in defending claims for abuse of process and malicious use of process. As in *Milton Co.*, the appellant pointed out that the attorneys "did not offer into evidence bills of either attorney and thus offered no documentary evidence as to the hours each attorney worked, precisely what they did during those hours, and precisely what they charged for each task performed." *Id.* at 1008. Counsel, however, testified what their fees were and what work was performed. The court held this evidence was sufficient to support the fees awarded as a part of the damages award. *Id.* at 1009.

In the case at bar, defendants have provided ample documentation. In compiling the records needed to support the motion for attorney's fees, defendants' counsel have adequately allocated their fees. Defendants' counsel explain that they have:

- relied on contemporaneously created time entries;

- analyzed their billing records, deposition transcripts, hearing transcripts, pleading and correspondence;

- redacted time spent on issues that were not related to the misappropriation count or could not be discerned as being so related;

- analyzed the reasonableness of the time entries requested;

- produced the original time entry descriptions from their billing records, removed all redacted time and entries, and created summaries arranged by stages of the case; and

- had the two primary attorneys responsible for this case from its conception review the redactions, as well as the entries and time requested.

*Stolove Decl.* ¶¶ 4–10. Defendants' counsel also note that during the process of segregating their records they excluded time entries whenever there was a doubt concerning the time entry. Accordingly, there is no inadequacy in defendants' showing.

## VII.

In determining a reasonable fee in this case, I shall apply the lodestar method. *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir.1998) ("In calculating an award of attorneys' fees, a court usually should determine[ ] a "lodestar" figure by multiplying the number of reasonable hours expended times a reasonable rate.") (prevailing plaintiff in employment discrimination case) (citations omitted); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("The most useful starting point for determining the

amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate."). In order to define the variables for this calculation, I consider the factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974); *see also Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir.1986) (addressing attorney's fees, costs and expenses under 42 U.S.C. § 1988).[7] The factors employed in determining the reasonable rate and the reasonable hours include:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Daly,* 790 F.2d at 1075 n. 2.

### The Hourly Rate

■ Defendants' fee request sets forth hourly rates of the various attorneys and paralegals involved in their defense.[8] In assessing the reasonableness of the attorneys' hourly rates, the following factors are considered: the skill required for performing the services, the customary fee, the experience, reputation and ability of counsel, the time limitations imposed by the circumstances, and the nature and length of counsel's relationship with the client.

---

**7.** The Fourth Circuit adopted the *Johnson* factors as part of its lodestar analysis in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). In *Barber,* however, the Fourth Circuit used these factors to enhance or decrease the award of attorney's fees. Following the Supreme Court's decision in *Blum v. Stenson,* 465 U.S. 886, 900–02, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Fourth Circuit in *Daly* found that it had been misapplying the *Johnson* factors. *Daly,* 790 F.2d at 1077. Consequently, the Fourth Circuit held that the *Johnson* factors should be considered in determining the lodestar figure, rather than in enhancing or decreasing fee awards after the lodestar figure had been calculated.

**8.** The following chart reflects the hourly rates charged by Arent Fox for the attorneys who worked on this case:

| Attorney | Year | Hourly Rate | | | |
|---|---|---|---|---|---|
| Barbara S. Wahl | 1998–1999 | $305 | Michael Rothman | 1999 | $125 |
| | Jan.–July, 2000 | $325 | | Jan.–July 2000 | $135 |
| | Aug.–Jan., 2001 | $335 | | Aug.–Jan., 2001 | $150 |
| | Feb., 2001–present | $360 | | Feb., 2001–present | $175 |
| Evan S. Stolove | 1998–1999 | $175 | Joseph Price | 1999 | $140 |
| | Jan.–July, 2000 | $200 | Melanie Moss | 1999 | $125 |
| | Aug.–Jan., 2001 | $210 | | | |
| | Feb., 2001–present | $250 | Jeff Rosenblum | 2001 | $175 |
| Jutta Klapisch | 1998–Aug., 1999 | $160 | Alayne O'Neill | 1998–2000 | $135 |
| | Sept.–Dec., 1999 | $185 | | 2001 | $140 |
| | Jan.–July, 2000 | $220 | Jack Hitt | 1999–2000 | $125 |
| | 2001 | $270 | | 2001 | $130 |

■ Arent Fox's hourly fees charged to the defendants ranged from $125 (for the most junior lawyer) to $360 (for the most senior lawyer). These hourly rates are not disproportionate to those charged by other attorneys in the Baltimore–Washington Metropolitan Area for complex commercial litigation in federal court. Further, these hourly rates are comparable, if not the same, as the hourly rates charged by Arent Fox for matters of similar or greater complexity. *Wahl Decl.* ¶¶ 14, 24–25.

The principal counsel for the defendants were Barbara Wahl, a former federal district court law clerk and partner at Arent Fox with expertise in complex commercial litigation in the Washington Metropolitan area, and Evan Stolove, also a former district court law clerk (as well as a state appellate court law clerk) whose practice has a special focus on issues related to technology and intellectual property. Dr. Jutta Klapisch, a native German speaker, with a doctorate in law from a German University and an L.L.M. degree from a United States law school, and an expertise in international corporate and commercial transactions, provided assistance and guidance on the German law aspects of this case.

Junior associates provided assistance where necessary. The level of experience of each of these junior associates is provided in the exhibits submitted by defendants.

The rates charged for paralegals is similarly comparable. *Id.* Arent Fox's attorneys and paralegals have substantial experience litigating complex commercial cases. Thus, the hourly rate to be utilized is both customary and reasonable.

Arent Fox has provided legal counsel to the defendants since the late 1990s and to individuals associated with Tricat for many years. The breadth of that experience has encompassed many legal matters. *Wahl Decl.* ¶ 26.

### The Hours Expended

■ Counsel have submitted a detailed itemization of the services rendered. *Defs.' Local R. 109.2.b Mem. in Support of Their Mot. for Attorneys' Fees ("Defs.' Local R. 109.2.b. Mem")*, Exs. A–D. The fee request includes an apportionment of those services attributable to the trade secret counts. A careful review has been given to the apportionment methodology and the reasonableness of the hours allocated to the trade secret counts. Defendants' approach is both sound and fair.

Defendants seek a total of $134,945 in fees related to the trade secret counts, $18,010 of which were incurred in preparing the fee petition. These figures were calculated through the lodestar method. Arent Fox attorneys and paralegals expended a total of 530.8 hours on the misappropriation claims. Specifically, Wahl spent 146.2 hours, Stolove spent 243.7 hours, Klapisch spent 45.4 hours on these claims. Other associates and paralegals spent a total of 95.5 hours on the claims. *Wahl Decl.* ¶ 11.

My review of the hours expended related to the trade secret counts leads me to find and conclude that the time spent was not excessive, the tasks undertaken were reasonably necessary to the defense of the 7.6 million dollar claim against defendants, and there are no unnecessary expenditures of time. Indeed, CMP does not appear to challenge any of the allocations. In light of the court's order entering summary judgment in favor of each defendant on these counts of the amended complaint, CMP's recovery on each of these counts has been reduced to zero. Damages sought for the remainder of CMP's case are alleged to be $370,000. Thus, the efforts by defense counsel were wholly justified and plainly successful.

## VIII.

For the reasons stated herein, defendants' motion for an award of attorney's fees shall be granted. An Order follows.

## ORDER

In accordance with the foregoing Memorandum, it is this 19th day of September, 2002, by the United States District Court for the District of Maryland, ORDERED

(1) Defendants' motion for attorney's fees (Paper No. 179) is GRANTED and the final judgment entered in this case shall reflect an award to defendants as an allowance for attorney's fees in the amount of $134,945, plus interest thereon accounting from the date of filing of the motion for attorney's fees; and it is further ORDERED

(2) The plaintiff's motions to strike (Paper Nos. 187 and 193), motion to schedule hearings (Paper No. 188–1) and for leave to conduct discovery (Paper No. 188–2) are DENIED; and it is further ORDERED

(3) The Clerk shall TRANSMIT copies of this Order and the foregoing Memorandum to all counsel.